SYLVESTER GENTRY *v.* STATE.

[59 South. 853.]

BURGLARY. *Consent to commission of crime. Evidence.*

Where upon the trial of a defendant for burglarizing a warehouse, the facts disclosed merely that the employees of the owners of the warehouse had information that a crime would be committed, and acting upon that information, took steps to apprehend the criminal, and their informant was not employed or induced to ensnare the defendant and was given no authority to detect or ferret out the guilty party and no plan was agreed upon whereby such informant was to commit the crime and no authority given him to break and enter the warehouse, but such informant merely announced a knowledge of a prearranged burglary and the employees had the trap prepared and sprung it when defendant put his foot in it. In such case the transaction between the employee and the informant did not amount to a consent to commit the crime and accused was properly convicted.

APPEAL from the circuit court of Simpson county. HON. W. H. HUGHES, Judge.

Sylvester Gentry was convicted of burglary and appeals.

The facts are fully stated in the opinion of the court.

*A. M. Edwards* and *M. U. Mounger,* for appellant.

*Ross Collins,* attorney-general, for state.

No briefs of counsel on either side found in the record.

COOK, C. J., delivered the opinion of the court.

Appellant was convicted for burglarizing the freight warehouse of the Gulf & Ship Island Railroad Company, at Saratoga, and stealing therefrom a sack of meat. There is no doubt of the breaking and entering, or of the taking as well. Defendant admitted both. Defendant, testifying as a witness in his own behalf, said that one Sam McNair, his codefendant, came to his home and told him he had purchased, at a bankrupt sale, a sack of meat, and same was there in the railroad warehouse at Saratoga; that he wanted to sell the meat; and that defendant, after some dickering, agreed to pay, and did pay, McNair seven dollars and fifty cents for same. He also said that he (McNair) and a small boy then went from his home in the nighttime to the company's warehouse, forced an entrance, and there the meat was delivered to him by McNair. He then shouldered the sack and started home, the boy accompaying him; but, after he had proceeded a short distance, he sat down on the roadside, rolled a cigarette, and proceeded to enjoy the seductive weed. Then it was, hearing a gun fire in the direction of Saratoga, he, for the first time, suspected that, possibly, Sam had no authority to break and enter in the nighttime the warehouse of the railroad company, and, meditating he spoke unto his youthful companion thus: "I bet this negro stole this stuff, and was selling it to me." Realizing the seriousness of his situation, defendant cast the sack of meat from him and

"made tracks" for his home. Sam McNair is a negro; the defendant is a white man.

This testimony of defendant furnishes the groundwork of his defense. It appears that a series of larcenies of the railroad's property had occurred a short time before this event, and the employees of the company had begun to set a watch over the station premises. A day or so prior to the present episode Sam McNair approached the company's employees, and informed them that he wanted to catch the thieves, and thereby prove that they were not of his race. Sam told the company's representatives that the guilty parties were not coming that night, but they would come the next night. The station agent told him, "All right," that he would set a trap for them, and if they did not look out they would be caught in it.

It is claimed that defendant was not guilty of burglary, because he had been decoyed and ensnared by Sam, and that, Sam being authorized so to do by the agents of the company, it follows that no crime was committed. The doctrine announced in the case of *Strait* v. *State,* 77 Miss. 693, 27 South. 617, is invoked in the present case. In the Strait Case, the owners of the burglarized property, suspecting that their office had been visited by some person, employed the services of Green Martin to ascertain who it was. Green went to Strait, and, pretending that he had left a bundle in the office, he borrowed a key from Strait, which belonged to his (Strait's) employer, and opened the door and entered the office, Strait following him, whereupon they were immediately arrested. The court said that Green Martin was acting at the instance of the owners of the property, and was operating under the license of the owners, and could not have been guilty of an unlawful act, and for this reason the defendant was not guilty of burglary by merely furnishing him a key wherewith to effect an entrance.

It will be observed that neither Strait nor Martin contemplated the commission of a crime. Martin had a

right to enter, and Strait furnished the key to Martin for the purpose of enabling Martin to secure goods which he pretended to have left in the office. Clearly Strait was not guilty of a crime in any aspect of the case, and it would seem that the law, as announced by the learned judge rendering the decision, though sound as an abstract proposition, had no application to the case he was reviewing. However, the doctrine invoked in the present case is the doctrine announced as controlling the Strait Case ,and we will proceed to discuss its application here.

The facts disclosed by this record merely show that the employees of the owners of the warehouse had information that a crime would be committed, and, acting upon that information, they took steps to apprehend the criminals. McNair was not employed or induced to ensnare the defendant. He was not given authority to detect or ferret out the guilty party. He claimed to know all about the contemplated crime, fixed the time when it would be attempted, and said he would come with the criminals. This was all. No plans were agreed upon whereby McNair was to commit a crime, no license was given him to break or enter the company's warehouse, nor is there a scintilla of evidence to indicate that McNair was to bring about the event. He merely announced a knowledge of a prearranged burglary, and the employees had the trap prepared and sprung same when defendant put his foot in its jaws.

These being the facts, we find no reason to criticise the refusal of the trial court to submit to the jury the rule announced in Strait's Case; no evidence being given making the rule applicable here.

*Affirmed.*